IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**PETER A. HUNTER,**

      Petitioner,

      v.

**WARDEN, ROSS
CORRECTIONAL INSTITUTION,**

      Respondent.

Case No. 2:16-cv-506
JUDGE MICHAEL H. WATSON
Magistrate Judge King

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition* (ECF No. 3), Respondent's *Return of Writ* (ECF No. 6), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** without prejudice as unexhausted unless, within fourteen (14) days, Petitioner notifies the Court that he wishes to delete his unexhausted claim of constitutional insufficiency of the evidence and proceed on his remaining, exhausted, claims. Petitioner must understand that his failure to so notify the Court will result in the dismissal of this action, without prejudice, as unexhausted.

**Facts and Procedural History**

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> This matter relates to events that occurred on March 23, 2013 at the Travelodge hotel on West Broad Street in Columbus, Ohio, where Jessica Devore and her long-time boyfriend Danny Lowe, III, were living with their two children. According to Devore, due to problems obtaining housing, they began staying at the Travelodge in the fall of 2012. During their time at the Travelodge, Devore became aware of other people living there. One person,

known to her as Craig, lived across the parking lot and his children occasionally played with Devore's children. Craig and Devore often talked, and approximately one month prior to the events in question, they had a conversation during which Devore asked Craig if he knew where she could get some Xanax. Craig told Devore that he did not, but would let her know if he got any.

On February 22, 2013, Devore received a tax refund of approximately $4,100. Devore obtained the entire amount in cash, and it was primarily in $20 denominations that she kept bound with her daughter's hair ties. According to Devore, she and Lowe were going to use the money for a deposit on a rental apartment and they were supposed to move into said apartment on March 26, 2013. Though she testified that she did not tell Craig specifically about the money, she stated she had previously mentioned to him that "[a]s soon as I get my taxes, I'm out of here" and that "within the month" she would be gone. (Tr. 86.)

On March 22, 2013, Devore, Lowe, and the children were at Lowe's brother's house where they stayed until approximately midnight. After Devore, Lowe, and their son returned to the Travelodge, Craig called and told Devore that a couple of his friends had Xanax that were two dollars a pill. Devore told Craig she wanted to discuss it with Lowe and for Craig to call her back. When Craig called the second time, Devore told him that she would take the Xanax. Craig called Devore a third time and told her that his friends would be there soon, and then Craig called again to tell Devore that his friends were about to walk over.

Moments later, Devore walked out of the bathroom and saw Lowe with the front door open and two males standing there. Through their conversations, it was said that the pills were three dollars. As Lowe reached down toward Devore's purse to get the money, the taller of the two men hit Lowe with a gun and said "[g]ive me all your money." (Tr. 93.) According to Devore, Lowe refused and the taller man started shooting. Lowe fell to the ground and "there was this blood squirting everywhere." (Tr. 93.) The taller man then ran out, but the shorter man remained in her room. Devore's son woke up screaming, and the shorter man grabbed her son, pointed a gun at him, and told Devore he would kill her son if she did not give him her money. Devore testified she was saying "[p]lease don't shoot my son," and the man let go of her son. (Tr. 95.) Devore grabbed her son and "threw him in the bathroom and shut the door." (Tr. 95.) Devore testified:

He said, "Give me your money now." Where Danny is laying, I had to step over Danny to get my purse because it was sitting beside of the refrigerator.

When I bent down, I was going to get the money out. I unzipped it. When I did, he hit me, took the purse and ran. I jumped up, looked outside, locked the door, called 911.

(Tr. 96.)

Police and medics arrived and Lowe was transported to the hospital while Devore provided police with her statement of what happened. Shortly thereafter, appellant was arrested and Devore identified appellant as the man who pointed the gun at her son. Devore stated she was "[o]ne hundred percent" sure in her identification of appellant, and Devore also identified appellant at trial. (Tr. 101.) Devore testified that, though Lowe survived the shooting, he is a quadriplegic and, due to complications, still remained hospitalized at the time of trial.

Columbus Police Officers Shane Sprague and Michael Segna heard the description that a female caller stated that two black males had shot her husband and taken her purse. As they were responding to the scene, the officers observed two black males walking northbound away from the Travelodge. Upon seeing the officers, the two men "split off" which caused the officers to stop them. (Tr. 185.) One man, Derrick Wade, had a revolver in his front pocket with two spent and three live rounds of ammunition. Officers also discovered that Wade had been shot, and, therefore, Wade was transported to a hospital.

The other man, appellant, had a "wad of cash" consisting of several $20 bills tied with yellow hairbands. (Tr. 206.) Appellant first told officers that there should be about $1,960 and that he had just come from the casino. Appellant then told officers that he met a man at McDonalds who gave him $2,000 to buy Percocet and that, as he was going to make the purchase, he saw two individuals running away from the hotel. According to appellant, one man ran toward an Arby's restaurant and the other man ran toward Broad Street.

Later that morning, appellant was interviewed at Columbus Police Headquarters by Columbus Police Detective Arthur Hughes. During the interview, appellant admitted that he went to Devore's room at the hotel and that a confrontation between a man named Derrick and "some white guy" occurred. (Tr. 325.) Appellant

explained to Detective Hughes that earlier that evening, a man known as D, who police later identified as the man Devore knew as Craig, approached appellant and told appellant there is a man at the hotel that wants to buy some Xanax. Appellant said that D told him the guy has "like five, six thousand dollars in cash on him." (Tr. 322.) Appellant then talked with Wade who told appellant that he had some Xanax. After talking with D, appellant and Wade proceeded to the hotel room. Appellant told Detective Hughes that Derrick and the other man started wrestling with each other and then he heard "pop, pop." (Tr. 325.) Appellant then said that he "grabbed the money" and put it in his pockets. (Tr. 326.) Also during this interview, appellant told Detective Hughes that both Derrick and the white guy had guns and that he ran away from the scene as shots were being fired. According to appellant's interview, Wade had a black gun, and Lowe had a "chrome gun." (Tr. 328.)

Police interviewed Devore again at the hospital to determine how Wade was shot. Devore testified she did not recall the interview she gave at the hospital relating to how Wade may have gotten shot. However, Devore testified that she believed Lowe had his .45 caliber Smith & Wesson on his person when he answered the door because "[h]e would not have answered the door without a gun on him." (Tr. 104.) Evidence was also presented at trial that, during her interview at the hospital, Devore said she got the gun and gave it to Lowe and helped him pull the trigger because Lowe was unable to move. Also, during this interview, Devore asked if she was going to be charged with attempted murder.

At trial, Devore testified that she did not recall the interview and that what she told police during that interview was "[n]ot true at all." (Tr. 157.) Devore testified, "I don't know if it was because I was traumatized, not trying to get [Lowe] in trouble. I don't know why I would say that, but I did say that. That is my voice." (Tr. 157.) According to her testimony at trial, if Wade was shot, Lowe must have shot him at some point during the altercation. Devore also testified that the gun appellant pointed at her and her son was "chrome, like, silver, kind of like [Lowe's]. It looked like [Lowe's]." (Tr. 161.) Additionally, Devore stated that she does not know what happened to Lowe's gun after the events in question and that the gun appellant used to threaten her and her son "could have been" Lowe's gun. (Tr. 167.)

On the side of the hotel, police found Devore's purse and her prescription medication. Both appellant and Wade tested positive for gunshot residue on their hands. A .45 caliber spent shell casing was collected from the hotel room, and a spent projectile was

> recovered from the bathroom door. No firearms were recovered at the scene, though the parties stipulated that the firearm recovered from Wade was a .38 Special revolver that was operable. Additionally, the parties stipulated that, if called to testify, Mark Hardy, an expert in firearm examination, would testify that the spent .38 caliber bullet collected at the scene was fired from the revolver recovered from Wade. Additionally, Hardy would testify that the .45 caliber spent bullet was not fired from the revolver. The parties also stipulated that appellant had a prior robbery conviction.
>
> On April 1, 2013, appellant was indicted and charged with two counts of robbery, one count of felonious assault, one count of attempted murder, one count of kidnapping, and one count of WUD. Appellant was also charged with a firearm and an RVO specification. The jury returned guilty verdicts on both of the aggravated robbery charges and the accompanying firearm specifications, but was unable to reach a verdict with respect to the charges for felonious assault, attempted murder, and kidnapping. Having entered a jury wavier on the WUD charge, the trial court found appellant guilty of WUD, as well as the RVO specification. A sentencing hearing was held, and the trial court imposed an aggregate imprisonment term consisting of 27 and one-half years.

*State v. Hunter*, No. 14AP-163, 2014 WL 5335355, at *1-4 (Ohio App. 10th Dist. Oct. 21, 2014). Petitioner timely filed a direct appeal from the judgment of conviction, which the state court of appeals construed as raising only the claim that "the judgment was not supported by the manifest weight of the evidence." *Id.* at *4. On October 21, 2014, the appellate court affirmed the judgment of the trial court. *Id.* Petitioner apparently did not file an appeal from that decision to the Ohio Supreme Court.

On January 16, 2015, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). He asserted that he had been denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim that the evidence was constitutionally insufficient to sustain his convictions; a claim that he had been denied the effective assistance of trial counsel; and a claim that the trial court had improperly admitted

5

certain evidence and had improperly sentenced him to consecutive terms of incarceration in violation of the Double Jeopardy Clause. (ECF No. 6-1, PageID# 209-25, 246-47). On March 17, 2015, the appellate court denied the Rule 26(B) application. (ECF No. 6-1, PageID# 245). On June 24, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal from that decision. (ECF No. 6-1, PageID# 272).

Petitioner filed this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 7, 2016. He alleges that the evidence is constitutionally insufficient to sustain his convictions (claim one); that he was denied the effective assistance of trial counsel (claim two); that he was denied a fair trial due to the admission of perjured testimony by prosecution witness Jessica Devore (claim three); that the trial court improperly imposed consecutive terms of incarceration in violation of the Double Jeopardy Clause (claim four); and that he was denied the effective assistance of appellate counsel (claim five). Respondent contends that Petitioner's claims are unexhausted, procedurally defaulted, or without merit.

**Exhaustion**

In claim one, Petitioner alleges that the evidence was constitutionally insufficient to sustain his convictions. Although the state appellate court addressed the claim only in terms of the manifest weight of the evidence,[1] Petitioner's appellate brief also addressed the claim in federal constitutional terms, and expressly referred to *Jackson v. Virginia*, 443 U.S. 307 (1979), and its standard for constitutional sufficiency of evidence. *See Brief of Defendant-Appellant* (ECF No. 6-1, PageID# 140-50). However, as noted *supra*, Petitioner apparently never pursued an appeal of the appellate court's decision affirming Petitioner's conviction to the Ohio Supreme

---

[1] In fairness, Petitioner's appellate brief posed the following single assignment of error: "The trial court erred when it entered judgment against the appellant when the judgment was not supported by the manifest weight of the evidence. . . ." *Brief of Defendant-Appellant* (ECF No. 6-1, PageID# 143, 148).

6

Court. He may still file a motion for delayed appeal to the Ohio Supreme Court pursuant to Ohio S.Ct.Prac.R. 7.01(A)(4). Therefore, this claim remains unexhausted.

Before a federal habeas court may grant relief, a state prisoner must exhaust his available remedies in the state courts. 28 U.S.C. § 2254(b)(1); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993). If a habeas petitioner has the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(b), (c). Moreover, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the exhaustion requirement. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990). In Ohio, this exhaustion requirement includes the filing of a motion for leave to file a delayed appeal to the state court of appeals or to the Ohio Supreme Court, if the time for filing a notice of appeal as of right in a felony case has expired. *See* Ohio App. R. 5(A); Ohio Sup.Ct. R. 7.01(A)(4). Because Petitioner did not pursue either a direct or delayed appeal to the Ohio Supreme Court, his claim of constitutional insufficiency of the evidence remains unexhausted.

Federal courts may not entertain "mixed petitions," *i.e.*, petitions that present both exhausted and unexhausted claims. *Rose v. Lundy*, 455 U.S. 509 (1982). However, federal courts have the discretion to stay a mixed petition in order to permit the petitioner to present his unexhausted claim to the state courts, and then to return to federal court for review of all, now exhausted, claims. *Rhines v. Weber*, 544 U.S. 269 (2005). However, stays under these circumstances should be only sparingly granted; stays are not appropriate, for example, when the unexhausted grounds are plainly meritless. *Id*. at 278. A petitioner seeking a stay to permit the exhaustion of an unexhausted claim must demonstrate both good cause for having failed to exhaust his state court remedies and a potentially meritorious claim. *Id.* at 277–78.

7

The record does not indicate that Petitioner can establish good cause for having failed to pursue a delayed appeal to the Ohio Supreme Court. Further, a stay of proceedings is unwarranted in this case because a motion for delayed appeal would have little, if any, likelihood of success. *See Williams v. Thaler*, 602 F.3d 291 (5th Cir. 2010) (When a petitioner is "procedurally barred from raising [his] claims in state court," his "unexhausted claims are plainly meritless.").

Therefore, this action is subject to dismissal as unexhausted.

## Recommended Disposition

The Magistrate Judge therefore **RECOMMENDS** that this action be **DISMISSED** without prejudice as unexhausted, unless Petitioner notifies the Court, within fourteen (14) days, that he wishes to delete his unexhausted claim of constitutional insufficiency of the evidence and proceed on his remaining, exhausted, claims. Petitioner must understand that his failure to so notify the Court will result in the dismissal of this action, without prejudice, as unexhausted.

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

 *s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge
April 24, 2017
