# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

PETER A. HUNTER,

     Petitioner,

                                     **Case No. 2:16-cv-506**

     v.                              **JUDGE MICHAEL H. WATSON**

                                     **Magistrate Judge King**

WARDEN, ROSS
CORRECTIONAL INSTITUTION,

     Respondent.

## REPORT AND RECOMMENDATION

On May 10, 2017, the Court overruled Petitioner's *Objection* (Doc. 9) and affirmed the *Report and Recommendation* (Doc. 8), in which the Magistrate Judge recommended that the *Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254* (Doc. 3) ("*Petition*") be dismissed without prejudice as unexhausted unless Petitioner notifies the Court that he wishes to delete his unexhausted claim of constitutional insufficiency of the evidence and proceed only on his remaining, exhausted, claims. *Opinion and Order* (Doc. 10). Petitioner asks that the Court reconsider that decision. *Motion for Reconsideration and Motion for Stay and Abeyance* (Doc. 11). Respondent opposes that request. *Respondent's Opposition to Petitioner's Motion for Reconsideration and Motion for Stay and Abeyance* (Doc. 12). For the reasons that follow, the Magistrate Judge **RECOMMENDS** that Petitioner's *Motion for Reconsideration and Motion for Stay and Abeyance* (Doc. 11) be **GRANTED** but that the *Petition* and this action be **DISMISSED**.

### *Motion for Reconsideration and Motion for Stay and Abeyance*

One of the claims asserted in this action is the claim that the evidence was constitutionally insufficient to sustain Petitioner's convictions. As previously discussed in the

earlier opinions of the Court, Petitioner raised an insufficiency-of-evidence claim on direct appeal but he did not pursue an appeal to the Ohio Supreme Court from the appellate court's decision affirming the judgment of conviction. However, Petitioner may still pursue a delayed appeal. *See* Ohio S.Ct.R. 7.01(A)(4). It was for that reason that the Court previously concluded that this claim remains unexhausted. *See Report and Recommendation* (Doc. 8); *Opinion and Order* (Doc. 10).

Petitioner now seeks reconsideration of the Court's conclusion in that regard, representing that he does not intend to raise in these proceedings the same insufficiency-of-evidence claim that he raised in his direct appeal. Rather, Petitioner states, the claim raised in these proceedings is the claim that he raised in his application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). Petitioner insists that he has therefore exhausted his state court remedies in connection with this particular claim (although he complains that the state appellate court did not address his arguments in support of that claim). Petitioner also asks, should the Court remain convinced that the claim is unexhausted, that these proceedings be stayed pending exhaustion of this claim in the Ohio Supreme Court.

Petitioner was convicted on charges of aggravated robbery, with firearm specifications, and on one count of having a weapon while under a disability, with a repeat violent offender specification. The first claim presented in the *Petition* alleges that the evidence was constitutionally insufficient to sustain Petitioner's convictions, because Jessica Devore – who identified Petitioner as one of the perpetrators – lied and her testimony was not credible, and because the State failed to establish that Petitioner had robbed Danny Lowe, who had been shot and seriously wounded during the incident. *Petition* (Doc. 3, PageID# 42). In this respect, Petitioner argues that the money that he (and Derrick Wade, who was arrested at the same time

as Petitioner) took did not belong to Lowe who, Petitioner states, still had $800.00 in his possession even after the robbery had taken place. *Id*. (PageID# 58). Even if the money had belonged to Devore and Lowe, Petitioner argues, the two counts of aggravated robbery with firearm specifications should have been merged.

In his direct appeal, Petitioner challenged Devore's credibility and her testimony that Petitioner had a firearm on his person; he also argued that the State failed to establish that the firearm was operable. *See State v. Hunter*, No. 14AP-163, 2014 WL 5335355, at *5 (Ohio App. 10th Dist. Oct. 21, 2014). In his Rule 26(B) proceedings, Petitioner argued that his appellate attorney was ineffective because he failed to raise on appeal a claim of insufficiency of evidence based on the same facts alleged in the *Petition*. *See Application for Reopening* (Doc. 6-1, PageID# 210-11).

It therefore appears that the insufficiency-of-evidence claim raised in these proceedings is not precisely the same as the insufficiency-of-evidence claim raised in Petitioner's direct appeal. The claim presented before this Court is therefore not unexhausted. Even if it were, "[t]he Supreme Court has held that the exhaustion requirement. . . is not jurisdictional, and that a court 'should determine whether the interests of comity and federalism will be better served by addressing the merits [of an unexhausted claim] forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits' of the claim." *Granger v. Hurt*, 215 Fed.App. 485, 492 (6th Cir. 2007)(citing *Granberry v. Greer*, 481 U.S. 129, 134 (1987)). This Court concludes that the interests of comity and federalism would be best served by addressing the merits of Petitioner's claim rather than by dismissing this action for failure to exhaust. Moreover, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

State." 28 U.S.C. § 2254(b)(2). As discussed below, the claim of insufficiency of evidence as presented in the *Petition* plainly lacks merit.

Under all these circumstances, it is **RECOMMENDED** that Petitioner's *Motion for Reconsideration and Motion for Stay and Abeyance* (Doc. 11) be **GRANTED** and that the Court consider the merits of Petitioner's claims.

## Standard of Review

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the standards of the Antiterrorism and Effective Death Penalty Act ("the AEDPA") govern this case. The United State Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, —U.S.—, 134 S. Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

The AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Further, under the AEDPA, the factual findings of the state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)). The United States Court of Appeals for the Sixth Circuit has summarized these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Id.* at 748–49. The burden of satisfying the AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

## Claim One

Petitioner asserts in his first claim that the evidence was constitutionally insufficient to sustain his convictions on two counts of aggravated robbery with a firearm specification. The state appellate court rejected this claim in relevant part as follows:

> Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law, not fact. *Id.* In determining whether the evidence is legally sufficient to support a conviction, "'[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Robinson*, 124 Ohio St.3d 76, 2009–Ohio–5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

> In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed, but whether, if believed, the evidence supports the conviction. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002–Ohio–2126, ¶ 79–80 (evaluation of witness credibility not proper on review for sufficiency of evidence); *State v. Bankston*, 10th Dist. No. 08AP–668, 2009–Ohio–754, ¶ 4 (noting that "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime").

> \*\*\*

> As is relevant here, R.C. 2911.01(A) provides in part:

> No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;

(2) Have a dangerous ordnance on or about the offender's person or under the offender's control;

(3) Inflict, or attempt to inflict, serious physical harm on another.

To be convicted of an accompanying firearm specification, a defendant must have had a firearm on or about his person or under his control while committing the aggravated robbery and either displayed, brandished or indicated that he possessed the weapon or used the firearm to facilitate the aggravated robbery. R.C. 2941.145. As is relevant to this case, R.C. 2923.13(A)(2) prohibits a person from knowingly acquiring, having, carrying or using any firearm or dangerous ordnance if "[t]he person is under indictment for or has been convicted of any felony offense of violence."

In arguing that his convictions must be reversed, appellant challenges Devore's credibility and her testimony that appellant had a firearm on his person, even though he was unarmed at the time of his arrest. Additionally, appellant argues that, even if Devore is to be believed, there is no evidence that the firearm appellant allegedly had was operable. We find these arguments unpersuasive.

"'Although a defendant may be charged in an indictment as a principal, the court may instruct the jury on complicity where evidence at trial reasonably supports a finding that the defendant was an aider or abettor.'" *State v. Gonzalez*, 10th Dist. No. 10AP–628, 2011–Ohio–1193, ¶ 24, quoting *State v. Blackburn*, 5th Dist. No. 06 CA 37, 2007–Ohio–4282, ¶ 41, citing *State v. Tucker*, 8th Dist. No. 88231, 2007–Ohio–1710, ¶ 15. Here, the trial court instructed the jury that appellant could be convicted of the charged offenses as an aider or abettor. The complicity statute, R.C. 2923.03(A), provides in pertinent part that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * *: (2)[a]id or abet another in committing the offense."

To aid and abet means "'to assist or facilitate the commission of a crime, or to promote its accomplishment.'" *State v. Johnson*, 93 Ohio St.3d 240, 243 (2001), quoting Black's Law Dictionary (7th Ed.Rev.1999). In *State v. Pruett*, 28 Ohio App.2d 29, 34 (4th Dist.1971), the court stated that a common purpose among two

people "to commit crime need not be shown by positive evidence but may be inferred from circumstances surrounding the act and from defendant's subsequent conduct." "Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed." *Id.*

The evidence presented by the state in this case supports appellant's convictions either as a principal offender or as an accomplice. The evidence demonstrated that appellant and Wade went to Devore's room together for the purpose of selling Xanax. Devore testified that once there, Wade demanded that Lowe give him their money and when Lowe refused, Wade shot him. Wade fled, while appellant threatened Devore and her son with a gun. According to Devore, appellant stated he would kill Devore's son if she did not give him the money. Appellant then took Devore's purse and ran from the scene. Appellant and Wade were apprehended close to the scene shortly after the shooting. Once apprehended, appellant was found with $2,000 in cash wrapped in yellow hairbands. Wade was found with a revolver, and the state presented evidence that this revolver was operable and that a bullet collected from the scene was fired from this revolver. Additionally, there was evidence presented from which the jury could infer that Wade's gunshot wound was inflicted by Lowe's gun and that Lowe's gun was the same gun appellant used to threaten Devore and her son.

Construing the foregoing evidence in a light most favorable to the state, it was reasonable for the trier of fact to conclude beyond a reasonable doubt that appellant and Wade acted in concert in committing the aggravated robberies and the WUD. Consequently, we reject appellant's assertion that the record contains insufficient evidence to support his convictions for aggravated robbery and WUD, as well as the accompanying specifications.

*State v. Hunter*, No. 14AP-163, 2014 WL 5335355, at *4-6.

Before a criminal defendant can be convicted consistent with the United States Constitution, there must be evidence sufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In determining whether the evidence was sufficient to support a petitioner's conviction, a federal habeas court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S.

277, 296 (1992) (citing *Jackson*, at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id.* (quoting *Jackson*, at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume – even if it does not appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id*. (quoting *Jackson*, at 326).

Moreover, federal habeas courts must afford a "double layer" of deference to state court determinations of the sufficiency of the evidence. As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference must be given, first, to the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Second, and even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle for a habeas petitioner to overcome, and Petitioner has not done so here.

When construing the evidence in the light most favorable to the prosecution, Devore's testimony alone was constitutionally sufficient to establish that Petitioner committed two counts of aggravated robbery, as charged in Counts 1 and 2 of the *Indictment*, with a firearm specification, against Danny Lowe III, and Jessica Devore. As discussed by the state appellate court,

> [On the day at issue,] Devore walked out of the bathroom and saw Lowe with the front door open and two males standing there. Through their conversations, it was said that the [Xanax] pills were three dollars. As Lowe reached down toward Devore's purse to get the money, the taller of the two men hit Lowe with a gun and said "[g]ive me all your money." (Tr. 93.) According to Devore,

Lowe refused and the taller man started shooting. Lowe fell to the ground and "there was this blood squirting everywhere." (Tr. 93.) The taller man then ran out, but the shorter man remained in her room. Devore's son woke up screaming, and the shorter man grabbed her son, pointed a gun at him, and told Devore he would kill her son if she did not give him her money. Devore testified she was saying "[p]lease don't shoot my son," and the man let go of her son. (Tr. 95.) Devore grabbed her son and "threw him in the bathroom and shut the door." (Tr. 95.) Devore testified:

> He said, "Give me your money now." Where Danny is laying, I had to step over Danny to get my purse because it was sitting beside of the refrigerator.
>
> When I bent down, I was going to get the money out. I unzipped it. When I did, he hit me, took the purse and ran. I jumped up, looked outside, locked the door, called 911.

. . . Shortly thereafter, appellant was arrested and Devore identified appellant as the man who pointed the gun at her son. Devore stated she was "[o]ne hundred percent" sure in her identification of appellant, and Devore also identified appellant at trial. (Tr. 101.)

*State v. Hunter*, 2014 WL 5335355, at *1-2. Police observed Petitioner and Derrick Wade walking northbound away from the scene. Wade "had a revolver in his front pocket with two spent and three live rounds of ammunition." *Id*. at *2.

The other man, appellant, had a "wad of cash" consisting of several $20 bills tied with yellow hairbands. (Tr. 206.) Appellant first told officers that there should be about $1,960 and that he had just come from the casino. Appellant then told officers that he met a man at McDonalds who gave him $2,000 to buy Percocet and that, as he was going to make the purchase, he saw two individuals running away from the hotel. According to appellant, one man ran toward an Arby's restaurant and the other man ran toward Broad Street.

Later that morning, appellant was interviewed at Columbus Police Headquarters by Columbus Police Detective Arthur Hughes. During the interview, appellant admitted that he went to Devore's room at the hotel and that a confrontation between a man named Derrick and "some white guy" occurred. (Tr. 325.) Appellant

explained to Detective Hughes that earlier that evening, a man known as D, who police later identified as the man Devore knew as Craig, approached appellant and told appellant there is a man at the hotel that wants to buy some Xanax. Appellant said that D told him the guy has "like five, six thousand dollars in cash on him." (Tr. 322.) Appellant then talked with Wade who told appellant that he had some Xanax. After talking with D, appellant and Wade proceeded to the hotel room. Appellant told Detective Hughes that Derrick and the other man started wrestling with each other and then he heard "pop, pop." (Tr. 325.) Appellant then said that he "grabbed the money" and put it in his pockets. (Tr. 326.) Also during this interview, appellant told Detective Hughes that both Derrick and the white guy had guns and that he ran away from the scene as shots were being fired. According to appellant's interview, Wade had a black gun, and Lowe had a "chrome gun." (Tr. 328.)

\*\*\*

On the side of the hotel, police found Devore's purse and her prescription medication. Both appellant and Wade tested positive for gunshot residue on their hands. A .45 caliber spent shell casing was collected from the hotel room, and a spent projectile was recovered from the bathroom door. No firearms were recovered at the scene, though the parties stipulated that the firearm recovered from Wade was a .38 Special revolver that was operable. Additionally, the parties stipulated that, if called to testify, Mark Hardy, an expert in firearm examination, would testify that the spent .38 caliber bullet collected at the scene was fired from the revolver recovered from Wade. Additionally, Hardy would testify that the .45 caliber spent bullet was not fired from the revolver. The parties also stipulated that appellant had a prior robbery conviction.

*State v. Hunter*, 2014 WL 5335355, at *2-3. Despite Petitioner's argument to the contrary, Ohio law provides for Petitioner's conviction as an aider and abettor to the crimes charged without any express allegation to that effect in the charging document:

"R.C. 2923.03(F) states: 'A charge of complicity may be stated in terms of this section, or in terms of the principal offense.' Thus, a defendant charged with an offense may be convicted of that offense upon proof that he was complicit in its commission, even though the indictment is 'stated * * * in terms of the principal offense' and does not mention complicity. R.C. 2923.03(F) adequately notifies defendants that the jury may be instructed on

complicity, even when the charge is drawn in terms of the principal offense. *See State v. Keenan* (1998), 81 Ohio St.3d 133, 151, 689 N.E.2d 929, 946, citing *Hill v. Perini* (C.A.6, 1986), 788 F.2d 406, 407-408."

The above quote correctly sets forth the law in Ohio.

*State v. Wilder,* No. L-01-1401, 2003 WL 879070, at *3 (Ohio App. 6th Dist. March 7, 2003).

Ohio cases specifically have held that a defendant may be found guilty of complicity to a crime even though the defendant was indicted and prosecuted as a principal offender. *State v. Tumbleson* (1995), 105 Ohio App.3d 693, 664 N.E.2d 1318 (holding the trial court properly instructed the jury that the defendant could be found guilty of complicity to aggravated robbery even though he was indicted as a principal rather than under the complicity statute); *State v. Ensman* (1991), 77 Ohio App.3d 701, 603 N.E.2d 303 (holding that defendant was on notice that he was either the principal offender or an aider and abettor by virtue of the statute providing that a charge of complicity may be stated in terms of the principal offense); *State v. Dotson* (1987), 35 Ohio App.3d 135, 520 N.E.2d 240 (holding that where a defendant acts as a middleman in a sale of drugs and is charged under the complicity statute, the defendant is on notice that evidence could be presented that he was either a principal offender or an aider and abettor); *State v. Strub* (1975), 48 Ohio App.2d 57, 355 N.E.2d 819. If the evidence presented during trial could reasonably be found to have proven the defendant's guilt as an aider and abettor, a jury instruction on complicity is proper. *Dotson, supra.*

*State v. Barnes,* No. 04AP-1133, 2005 WL 1515325, at *7 (Ohio App. 10th Dist. June 28, 2005).

Moreover, the state appellate court rejected Petitioner's argument that the convictions should have been merged, or that the State failed to establish two counts of aggravated robbery even if Petitioner and Wade did not take money that belonged to Lowe.

"'When a defendant commits offenses against different victims during the same course of conduct, the offenses do not merge because a separate animus exists for each [offense].'" *State v. Carson,* 10th Dist. No. 11AP-809, 2012-Ohio-4501, ¶ 19, quoting *State v. Coffman*, 10th Dist. No. 09AP-727, 2010-Ohio-1995, ¶ 8.

*State of Ohio v. Hunter, Memorandum Decision on Application for Reopening* (Doc. 6-1, PageID# 250.)

In short, when viewing all the evidence in the light most favorable to the prosecution, there was sufficient evidence that Petitioner and his accomplice, while attempting to commit or while committing a theft offense, or while fleeing immediately after the attempt or offense, had a deadly weapon on or in their control, displayed or brandished the weapon, and inflicted serious physical harm on Lowe, who was shot and paralyzed. The fact that Lowe may have had money in his pockets when the ambulance arrived does not alter this conclusion because Jessica Devore testified that Lowe had in his possession not only money from her tax return but also $700 to $900 from his own paycheck. *Transcript* (Doc. 6-2, PageID# 415, 444).

Claim one is therefore without merit.

### Claims Two through Five

In addition to the claim of insufficiency of evidence, the *Petition* also alleges that Petitioner was denied the effective assistance of trial counsel (claim two); that he was denied a fair trial due to the admission of perjured testimony by prosecution witness Jessica Devore (claim three); that the trial court improperly imposed consecutive terms of incarceration in violation of the Double Jeopardy Clause (claim four); and that he was denied the effective assistance of appellate counsel (claim five). Respondent contends that Petitioner has committed a procedural default of claims two through four and that claim five, because it is without merit, cannot serve as cause sufficient to excuse the procedural default of the other claims.

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to

protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration.  28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies.  *Id*.; *Anderson v. Harless*, 459 U.S. 4, 6 (1982 (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)).  Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas. . . ."  *Coleman* v. *Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review."  *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)).  One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted.  That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so.  In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to

respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim has been waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards*, 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. at 479). That is because, before counsel's

ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards,* 529 U.S. at 450–51. The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in Coleman: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to " 'protect the integrity' of the federal exhaustion rule." *Id*., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by " 'letting the time run' " so that state remedies were no longer available. *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].' " *Id*., at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Id.* at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default has occurred, it must not consider the merits of the procedurally defaulted claim unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. at 495–96).

In claim two, Petitioner alleges that he was denied the effective assistance of trial counsel. In claim three, Petitioner alleges that he was denied a fair trial because of the admission of Jessica Devore's perjured testimony. In claim four, Petitioner alleges that the trial court imposed consecutive terms of incarceration in violation of the Double Jeopardy Clause. Petitioner failed to raise any of these claims on direct appeal, where he was represented by new counsel. Further, he may now no longer do so by operation of Ohio's doctrine of *res judicata. See State v. Cole,* 2 Ohio St.3d (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*.). The state courts were never given an opportunity to enforce this procedural rule due to the nature of Petitioner's procedural default.

Ohio's doctrine of *res judicata* is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. at 732–33. To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim*." Id.* at 423 (quoting *James v.*

*Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964). The United States Court of Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); Seymour v. Walker, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity.

With respect to the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief on Petitioner's claims two through four.

Petitioner may still secure review of the merits of these procedurally defaulted claims if he demonstrates cause for his failure to follow this state procedural rule, as well as actual prejudice from the constitutional violations that he alleges.

As cause for his procedural default of claims two through four, and in habeas corpus claim five, Petitioner alleges the denial of the effective assistance of appellate counsel. Petitioner raised this claim in his application to reopen his appeal pursuant to Rule 26(B) and the state appellate court rejected this claim in relevant part as follows:

> To prevail on an application to reopen, defendant must make "a colorable claim" of ineffective assistance of appellate counsel

under the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). . . . Under *Strickland,* defendant must demonstrate the following: (1) counsel was deficient in failing to raise the issues defendant now presents, and (2) defendant had a reasonable probability of success if the issue had been presented on appeal . . . An appellate attorney has wide latitude and the discretion to decide which issues and arguments will prove most useful on appeal. Furthermore, appellate counsel is not required to argue assignments of error that are meritless. . . .

[A]ppellant contends his appellate counsel was ineffective for failing to challenge the effectiveness of appellant's trial counsel. In this proposed assignment of error, appellant asserts his trial counsel was ineffective for failing to object to the trial judge's answer to the jury's question regarding whether or not any drugs were found at the crime scene.

According to the record, the jury asked, "[w]as Xanax or any other drugs ever found?" (Tr. 479.) In response, the trial court answered, "you've had all the evidence necessary to decide the case." (Tr. 479.) Appellant has not demonstrated that this answer was improper as it is well-established that a jury is not entitled to evidence that was not admitted at trial. *State v. Scudder*, 10th Dist. No. 91AP-506 (Oct. 20, 1992); *State v. Wolff*, 7th Dist. No. 07 MA 166, 2009-Ohio-7085, ¶ 30. To the extent appellant is also arguing that his trial counsel was ineffective for failing to admit evidence that drugs were found at the crime scene, there has been no demonstration that this occurred and no demonstration that appellant was prejudiced by the lack of admission of such evidence.

Also under this proposed assignment of error, appellant argues his trial counsel was ineffective for failing to file a motion to suppress Jessica Devore's testimony on the basis that her testimony was not credible. Additionally, appellant asserts his trial counsel was ineffective for failing to impeach Devore's testimony. First, we note appellant has failed to set forth a basis upon which a suppression motion would have been granted. Second, the record reveals appellant's trial counsel conducted an extensive cross-examination of Devore, including drawing out potential inconsistencies between Devore's testimony at trial and her prior statements to police. As noted in our disposition of appellant's direct appeal wherein appellant challenged the credibility of Devore's testimony:

> " '[W]here a factual issue depends solely upon a determination of which witnesses to believe, that is the credibility of witnesses, a reviewing court will not, except upon extremely extraordinary circumstances, reverse a factual finding either as being against the manifest weight of the evidence or contrary to law.' " *In re L.J.,* 10th Dist. No. 11AP-495, 2012-Ohio-1414, ¶ 26. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witness' manner and demeanor, and determine whether the witnesses' testimony is credible. *State v. Williams*, 10th Dist. No. 02AP-35, 2002-Ohio-4503, ¶ 58; *State v. Clarke*, 10th Dist. No. 01AP-194 (Sept. 25, 2001).

*Hunter* at ¶ 27.

For all of the foregoing reasons, we find that appellant's second proposed assignment of error fails to raise a colorable claim of ineffective assistance of appellate counsel.

. . . [A]ppellant contends his appellate counsel was ineffective for failing to assert a claim of prosecutorial misconduct. According to appellant, the prosecutor committed misconduct in eliciting perjured testimony from Devore. "The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). In order to meet the test for prosecutorial misconduct under these circumstances, the defendant must show that: (1) the statement was false, (2) the statement was material, and (3) the prosecutor knew it was false. *United States v. O'Dell*, 805 F.2d 637, 641 (6th Cir. 1986). The burden is on the defendant to show that the testimony was perjured. *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987).

Not only has appellant failed to establish that Devore's statements were false, but also appellant has failed to establish that, if the statements were false, the prosecutor had any knowledge of their alleged falseness. Further, to the extent Devore's trial testimony contained inconsistencies or was inconsistent with prior statements to police this court has already addressed appellant's assertion that

his convictions cannot stand due to Devore's failure to provide credible testimony. *Hunter.*

\*\*\*

Upon review, we conclude appellant has failed to meet his burden to demonstrate that there is a genuine issue as to whether he was deprived the effective assistance of counsel on appeal.

*Memorandum Decision on Application for Reopening* (Doc. 6-1, PageID# 248-50).

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a petitioner claiming the ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. *Id.* at 687; *Hale v. Davis*, 512 Fed.Appx. 516, 520 (6th Cir. 2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below an objective standard of reasonableness.'" *Poole v. MacLaren*, 547 Fed.Appx. 749, 754 (6th Cir. 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted) and citing *Strickland*, 466 U.S. at 687). To make such a showing, a petitioner must overcome the "strong[ ] presum[ption]" that his counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 687. "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland,* 466 U.S. at 689).

The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Burger v. Kemp*, 483 U.S. 776 (1987). . . . Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id*. . . . . The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751–752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751–52).

*Leonard v. Warden*, *Ohio State Penitentiary*, No. 1:09-cv-056, 2013 WL 831727, at *28 (S.D. Ohio March 6, 2013). Factors to be considered in determining whether a defendant has been denied the effective assistance of appellate counsel include:

(1) Were the omitted issues "significant and obvious"?

(2) Was there arguably contrary authority on the omitted issues?

(3) Were the omitted issues clearly stronger than those presented?

(4) Were the omitted issues objected to at trial?

(5) Were the trial court's rulings subject to deference on appeal?

(6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

(7) What was appellate counsel's level of experience and expertise?

(8) Did the petitioner and appellate counsel meet and go over possible issues?

(9) Is there evidence that counsel reviewed all the facts?

(10) Were the omitted issues dealt with in other assignments of error?

(11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle,* 171 F.3d 408, 427–28 (6th Cir. 1999) (citations omitted).

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington,* 562 U.S. at 105. The Court observed that, while "'[s]urmounting *Strickland's* high bar is never . . . easy,'. . ., [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more difficult." *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)) (and citing *Strickland*, 466 U.S. at 689). The Supreme Court instructed that the standards created under *Strickland* and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard*." Id.*

The record in this case fails to reflect that Petitioner can establish the denial of the effective assistance of appellate counsel based on his attorney's failure to raise a claim of the denial of the effective assistance of trial counsel. As discussed by the state appellate court, Petitioner does not indicate, and the record does not reflect, any basis on which defense counsel could have successfully filed a motion to suppress the testimony of Devore. *See Rodriguez v. Warden, Southern Ohio Correctional Facility,* 940 F.Supp.2d 704, 716 (S.D. Ohio 2013)(failure to file a motion to suppress does not constitute constitutionally ineffective assistance of counsel where there is no reasonable likelihood that the motion would have succeeded); *Adams v. Bradshaw*, 484 F.Supp.2d 753, 777 (N.D. Ohio 2007)(In order to succeed on the prejudicial aspect of a claim of ineffective assistance of counsel for failure to file a motion to suppress, a defendant must also prove that the motion is meritorious and that there is a reasonable

probability that the verdict would have been different absent the excludable evidence)(citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)); *Griffin v. Warden, Noble Correctional Institution,* No. 2:14-cv-00857, 2016 WL 1090960, at *11-12 (S.D. Ohio March 21, 2016)(no prejudice under *Strickland* based on counsel's failure to file a motion to suppress evidence where the record indicates that the motion could not have succeeded).

Further, the record indicates that defense counsel cross-examined Devore regarding her inconsistent statements to police. *See, e.g.*, *Trial Transcript* (Doc. 6-2, PageID# 421-22, 424). Devore indicated that she had "blacked out" and did not recall anything that occurred after the ambulance arrived, including her interview with Detective Hughes. *Id.* (PageID# 426). Devore also denied certain statements that she had made to Detective Hughes; however, relevant portions of her taped statement were played for the jury. Devore agreed that the tape recorded her voice, and that it was she who had made the statements. *Id.* (PageID# 437-38). Moreover, the manner in which Lowe had been shot – and whether or not Devore assisted Lowe in firing the gun at Wade – does not affect Devore's testimony that Petitioner and Wade violently robbed Devore and Lowe on the night in question. Notably, the jury acquitted Petitioner of the charges of felonious assault, attempted murder, and kidnapping. Nothing in the record supports Petitioner's claim that Devore lied, or that the prosecution knowingly elicited false testimony from Devore. Additionally, the record does not indicate that the trial court violated Ohio law in its response to the jury regarding the presence of Xanax at the scene. Petitioner cannot establish prejudice by reason of his attorney's failure to raise these issues on direct appeal.

Petitioner has failed to establish the denial of the effective assistance of appellate counsel. It follows that he has likewise failed to establish cause for his procedural default of his claims two through four.

The United States Supreme Court has also held that a claim of actual innocence may be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims." *Schlup v. Delo*, 513 U.S. 298, 326–27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray,* 477 U.S. at 496. In *Schlup*, the Supreme Court held that a credible showing of actual innocence is sufficient to authorize a federal court in reaching the merits of an otherwise procedurally-barred habeas petition. *Schlup*, 513 U.S. at 317. However, the actual innocence claim is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Id*. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

The actual innocence exception allows a petitioner to pursue his constitutional claims if it is "more likely than not" that new evidence – not previously presented at trial – would allow no reasonable juror to find him guilty beyond a reasonable doubt. *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005). The Court of Appeals for the Sixth Circuit explained the exception as follows:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828

> (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter,* 395 F.3d at 589–90 (footnote omitted). Petitioner does not meet these standards here. After an independent review of the record, the Court does not deem this to be so extraordinary a case as to relieve petitioner of his procedural defaults.

### Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that Petitioner's *Motion for Reconsideration and Motion for Stay and Abeyance* (Doc. 11) be **GRANTED** but that the petition for a writ of habeas corpus be **DISMISSED.**

### Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

    *s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge

June 15, 2017